IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JANE DOE, a minor child, § | |
| by and through her next friends, § | |
| MARY DOE and JOHN DOE; § | |
| Plaintiff, § | |
| § | CIVIL NO. 6:23-CV-00566-ADA-JCM |
| v. § | |
| § | |
| LORENA INDEPENDENT SCHOOL § | |
| DISTRICT and APRIL JEWELL, § | |
| Defendants, § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

**TO:**   **THE HONORABLE ALAN D ALBRIGHT,**
        **UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Lorena Independent School District's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 15) and April Jewell's Motion to Dismiss Plaintiff's Original Complaint (ECF No. 16) both under Rule 12(b)(6). For the following reasons, the undersigned **RECOMMENDS** that the Motions be **DENIED.**

### I.   BACKGROUND

Plaintiff Jane Doe, a minor child and former Lorena ISD student, sues Lorena Independent School District and April Jewell, Lorena Primary School's principal, for violations of 42 U.S.C. § 1983 and Title IX after she was sexually abused at school during the 2020-2021

1

academic year by Nicholas Crenshaw, a long-term substitute teacher. Pl.'s Compl. at 1 (ECF No. 1).

Jane Doe, a five-year-old student at Lorena Primary School, was placed in Stephanie Heslep's pre-kindergarten classroom at the beginning of the 2020-2021 academic school year. *Id*. at 5. Nicholas Crenshaw was a long-term substitute teacher assigned primarily to Ms. Heslep's classroom. *Id*. Prior to October 2020, Ms. Heslep routinely let Crenshaw lie underneath a blanket at nap time with Jane while the lights were off and other students were sleeping. *Id*.

In October 2020, Melinda Sams, a classroom special education aide, noticed Crenshaw's overt favoritism of two female students, Jane and Student A. *Id*. at 6. She saw Crenshaw frequently place Jane or Student A on his lap, allow them to wear his hoodies, allow them to use his phone during school hours, and lay under a blanket with Jane at nap time. *Id*. Concerned about these behaviors, Ms. Sams reported the inappropriate conduct to Ms. Heslep. *Id*. Ms. Heslep spoke to Crenshaw about the behavior, which improved for a short time. *Id*.

In January 2021, Ms. Sams again noticed Crenshaw's inappropriate behavior and took photographs of it, including a photo of Crenshaw lying under a blanket at nap time with Jane. *Id*. Ms. Sams showed the photographs to Vice Principal Denae Gerik. *Id*. On February 4, 2021, Jewell and Gerik reprimanded Ms. Sams for taking the photographs. *Id*. at 7. Jewell never asked to see the photos, and she stated that she would "have to go to Rusty" because of the photos. *Id*. Rusty Grimm is the School District's Director of Support Services responsible for Title IX compliance. *Id*.

It is unclear whether Jewell notified Mr. Grimm. *Id*. Ms. Sams felt as though she had done something wrong by reporting the behavior, so she took a job at a different school in March

2021. *Id*. Plaintiffs also allege that Toni Peebles, an instructional aide, reported Crenshaw's behavior to Jewell in January 2021. *Id*.

Marie Willis noticed Crenshaw's infatuation with Jane and Student A and disregard of other students in March 2021. *Id*. at 8. In early March, Ms. Willis reported Crenshaw's inappropriate behavior to Jewell. *Id*. Jewell asked if Ms. Willis had seen the photographs. *Id*. Ms. Willis responded that she had not seen all the photographs. *Id*. Ms. Willis reported that she witnessed Crenshaw regularly having Jane sit on his lap, wear his clothes around school, and hold his hand. *Id*.

After this meeting, Ms. Heslep's class was split into small groups of four to five students, and Jane was assigned to Crenshaw's group. *Id*. at 9. Ms. Willis responded to Crenshaw's classroom multiple times for crying and screaming students only to find the door locked with Crenshaw alone with the students. *Id*. Ms. Willis noticed students who were visibly upset about having to go into the room with Crenshaw. *Id*. In mid-March 2021, Jane began complaining about having to go to school even begging her parents to allow her to stay at home. *Id*. On March 31, 2021, Jane's stomach hurt, and she was sent to the nurse. *Id*. She also told Ms. Heslep that "it hurts when [she] go[es] potty," pointing to her private area in the front. *Id*. at 10.

In April 2021 a meeting was held with Principal Jewell, Vice Principal Gerik, Willis, Special Education Director Steven McKissick, Ms. Heslep, teacher Tabitha Adams, and one or two other employees. *Id*. During the meeting, Crenshaw's behavior was discussed including his relationship with students, locking his classroom door, and students' outbursts in his room. *Id*. At one point in the meeting, Jewell stated, "we can't be picky" and "who we have is what we have to work with." *Id*. Shortly after the meeting, Ms. Willis was pulled from the pre-kindergarten

room assignment, and at the end of the 2020-2021 school year, Ms. Willis was transferred out of Lorena Primary School. *Id*.

On May 7, 2021, Jane was out of the classroom at a field day. *Id*. When Crenshaw was alone in the classroom, he sexually abused Student A by placing his hand under her clothing and touching her genitals during nap time. *Id*. at 12. That night, Student A told her parents Crenshaw "put his hand down [her] panties." *Id*. On May 8, 2021, Jane's parents were notified there was a police investigation into Crenshaw's inappropriate behavior towards a student. *Id*. On May 19, 2021, Jane's mother, Mary Doe, had a phone conversation with Jewell. During this conversation, Jewell stated she was sorry, started crying, and told Mary she should have been told about Crenshaw's inappropriate behavior with Jane earlier that year. *Id*.

On June 13, 2021, Jane told her parents Crenshaw sexually abused her. *Id*. Jane told her mother she was upset she never got to hang out with "Mr. Nic" at his house "because that is what boyfriends and girlfriends do" and that Crenshaw had repeatedly told Jane he loved her. *Id*. Jane described "lots of things" she would do with "Mr. Nic" as "boyfriend and girlfriend" and the "games" Crenshaw "played" with her during nap time. *Id*. Jane said "Mr. Nic" routinely kissed her on the lips, put his "privy" on top of his jeans and had Jane touch and play with it, put Jane's hands in his pants and had her play with his "privy," pulled Jane's panties aside and touched Jane inside her "privy" and then put his finger in his mouth, and they tickled each other's "boobies" for fun. *Id*. Jane said she did not like it when "Mr. Nic" made her touch his "privy" because it was all slimy down at the bottom and she didn't want to touch that, so she "just stayed at the top of it." *Id*. at 13. Crenshaw told Jane all these "games" were "their secret." *Id*.

Jane's parents reported Crenshaw's sexual abuse to law enforcement. Jane had a forensic interview on June 15, 2021, where Jane told law enforcement Crenshaw penetrated her vagina

4

with his finger, and "caused the child's hand to have sexual contact with his erect penis during nap time" which "she had to go wipe her hand off afterward because it had substance on it." *Id.* at 13.

Crenshaw admitted during his interview he had Jane "sit on his lap and the friction and movement caused him to become sexually aroused," and "he would then go to his residence and watch a pornographic video and masturbate to the thought of [her]." *Id.* Crenshaw was indicted on five counts of Aggravated Sexual Assault of a Child, one count of Continuous Sexual Assault of a Child, and one count of Indecency with a Child by Contact. *Id.* He pled guilty to all counts and was sentenced to no less than forty years in prison for the first five counts and twenty years for counts six and seven.

Jane's parents filed a grievance with the School District requesting an explanation of how this continued abuse was allowed after multiple reports of Crenshaw's inappropriate behavior. *Id.* at 14. The School District refused to conduct a Title IX investigation or answer the Does' questions. *Id.* The Does attended a school board meeting on October 27, 2021, where the School District's agent and attorney demeaned the Does by claiming they were out to attack the school. *Id.* Jewell and Lorena ISD never investigated Crenshaw's behavior or notified Jane's parents, law enforcement, or Child Protective Services of the reports of Jane's sexual abuse during the school year. *Id.* at 11.

Based on these allegations, Plaintiffs sued Lorena ISD for violations of 42 U.S.C. § 1983 and Title IX[1] and Jewell for violations of 42 U.S.C. § 1983. *Id.* at 1. Lorena ISD and Jewell seek to dismiss the § 1983 claims for failure to state a claim upon which relief can be granted. ECF No. 15; ECF No. 16.

---

[1] Defendant Lorena ISD did not move to dismiss the Title IX claim.

## II.     LEGAL STANDARDS

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations, accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents

referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III. DISCUSSION

**A. Jewell's Motion to Dismiss Jane's 42 U.S.C. § 1983 claims should be denied.**

Jane sued Jewell for violations of Jane's constitutional rights under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment right to bodily integrity based on failure to supervise and arbitrary and conscience-shocking executive action. Pl.'s Compl. at 26, 30. Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. 42 U.S.C. § 1983. Two allegations are required to state a claim under § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). The claims were brought in Jewell's official and personal capacity as principal of Lorena Primary School. Jewell argues Jane's § 1983 claims should be dismissed for failure to state a claim under Rule 12(b)(6).

**1. Jane has adequately pleaded her constitutional claims under 42 U.S.C. § 1983 against Jewell in her official and personal capacity.**

Jewell argues that "Plaintiff does not allege how Defendant Jewell allegedly failed to supervise Crenshaw, and merely concludes she was on notice of Crenshaw's deviant behavior as a result of meetings Plaintiff supposes Defendant Jewell may have had with LISD employees, but *none* of which Plaintiff attended." Jewell's Mot. at 7. At the pleading stage, Jane is only required to allege facts which state a plausible claim that Jewell learned of facts or a pattern of inappropriate sexual behavior by Crenshaw pointing plainly towards the conclusion that the

subordinate was sexually abusing the students. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994). Here, Plaintiff alleged that at least three school officials directly reported to Jewell about Crenshaw's inappropriate relationship with Jane, and there was photographic evidence showing Crenshaw lying under a blanket with Jane at nap time. Pl.'s Compl. at 8. The reports and meetings regarding Crenshaw's inappropriate behavior allegedly took place over the course of the 2020-2021 academic school year with Jewell being directly notified for the first time by Melinda Sams in January 2021. *Id*. at 6.

Jewell also misunderstands the standard Jane must satisfy at the pleading stage. Jewell implies Jane or her parents were required to attend staff meetings to allege that they occurred or the substance of those meetings in her pleadings. Jewell's Mot. at 7. Plaintiffs are not required to marshal evidence supporting their well-pleaded factual assertions at the motion to dismiss stage, Instead, Courts are to view well-pleaded facts in a light most favorable to the plaintiff in a motion to dismiss.

Jewell also claims that "Plaintiff only concludes that Defendant Jewell's 'job responsibilities and duties required her to supervise,' but alleges no causal link between Crenshaw's sexual abuse and any actual failure to supervise by Defendant Jewell." *Id.* at 7. Jane is only required to show Defendant Jewell failed to take action that was obviously necessary to prevent or stop the abuse causing a constitutional injury to Jane. *Taylor*, 15 F.3d at 454. Jane pleads that had Jewell supervised Crenshaw, he would not have been able to continue to abuse Jane and violate her constitutional right to personal security and bodily integrity. Pl.'s Compl. at 27. Instead, Jewell removed a supervisor who had reported Crenshaw's inappropriate behavior from the classroom and allowed Jane to be placed in a small unsupervised group of four to five students with Crenshaw. *Id*. at 9. Jewell also failed to investigate the reports of Crenshaw's

inappropriate behavior. *Id*. In fact, when shown photos of Crenshaw lying under a blanket with Jane at nap time, Jewell stated she would "have to go to Rusty," and reprimanded the staff member who took the pictures. *Id*. at 7. It does not appear from the facts pled that she did "go to Rusty." Accordingly, Plaintiffs have alleged that had Crenshaw been properly supervised, it is likely that he would not have been able to further violate her constitutional rights to bodily integrity.

Jewell argues "Plaintiff alleges no actual facts of how Defendant Jewell's alleged actions were deliberately indifferent, that Defendant Jewell had subjective knowledge of a serious risk of harm to Plaintiff, or that Defendant Jewell disregarded a known or obvious consequence in relation to providing supervision." Jewell's Mot. at 8. In *Taylor*, the court held "school officials can be held liable for supervisory failures that result in the molestation of a schoolchild if those failures manifest a deliberate indifference to the constitutional rights of that child." *Taylor*, 15 F.3d at 445. Here, Plaintiffs allege that multiple employees told Jewell about Crenshaw's inappropriate behavior with Jane starting in January 2021. Jewell took no action and refused to acknowledge the conduct despite reports from several employees. When viewed in a light most favorable to Plaintiffs, this shows a reckless disregard for Jane's right to bodily integrity.

Jewell also contends that "Plaintiff has not pleaded, as required, how these alleged actions of Defendant Jewell specifically amounted to 'actions grossly disproportionate to the need for action under the circumstances.'" Jewell's Mot. at 12–13. At this stage of the litigation, Jane must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Jane claims that after Jewell learned of Crenshaw's inappropriate behavior, she allowed Crenshaw to be Jane's unsupervised sub-group leader, did not investigate

Crenshaw for sexual harassment, and did not report Crenshaw to law enforcement, CPS, or Jane's parents. Pl.'s Compl. at 27.

Finally, Jewell claims "Plaintiff has not pleaded, as required, how Defendant Jewell allegedly acted so maliciously that it would shock the conscience." Jewell's Mot. at 13. In 1998, the Supreme Court stated, "for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). It is established that school officials should be on notice of teacher-on-student sexual harassment. *Taylor*, 15 F.3d at 449. Jane pleads facts showing that Jewell was given direct reports of inappropriate behavior from multiple school officials and failed to even ask the questions necessary to investigate the report. Pl.'s Compl. at 9. Despite these reports and photographs, Jewell did nothing. It took a criminal investigation by law enforcement and another student suffering sexual abuse for Jewell to act. *Id*. at 12. The only action Jewell took was to call Mary Doe crying and apologize for not telling Mary sooner about the reports she received regarding the sexual abuse suffered by Mary's five-year-old daughter. *Id*. This lack of executive action from Jewell as a principal of an elementary school, whose job it is to ensure the education, safety, and health of her students, shocks the conscience.

2. **Jewell is not entitled to qualified immunity.**

Jewell argues she is entitled to qualified immunity. Jewell's Mot. at 13. Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

As discussed, Jane pleads plausible facts to support her claim that Jewell violated her constitutional right to be protected from sexual abuse. The Court must now determine whether that constitutional right was clearly established at the time of the alleged misconduct. *Reed*, 923 F.3d at 414. A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right at issue, not merely that the conduct was otherwise improper. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The right of a student to be protected from physical sexual abuse by a teacher has

been clearly established since 1994. *Taylor*, 15 F.3d 443 at 451. Plaintiff has, therefore, stated a claim that overcomes qualified immunity and Jewell's Motion should be denied.

### B. Lorena ISD's Motion for Partial Dismissal of Jane's 42 U.S.C. § 1983 claims should be denied.

Jane sued Lorena ISD for violations of Jane's constitutional rights under 42 U.S.C. § 1983 for failure to train and absence of policy. Pl.'s Compl. at 24, 28. Lorena ISD argues Plaintiff's claims should be dismissed for failure to state a claim under 12(b)(6). Lorena ISD maintains Jane's Complaint fails to provide sufficient facts to establish the constitutional violations of failure to train and absence of policy, and Jane cannot establish municipal liability against Lorena ISD for claims asserted against Jewell.

Jane alleges Lorena ISD facilitated Crenshaw's rape and molestation of Jane by failing to provide training or education to administrators, staff, students, and parents on protecting students from sexual harassment. *Id*. at 20. Jane asserts there were no then-existing policies or protocols regarding training for employee-on-student sexual harassment. *Id*. Further, Lorena ISD had no Title IX Coordinator or other employees designated to handle complaints of teacher-on-student sexual harassment who were adequately trained. *Id*. In support, Jane alleges Lorena ISD's lack of training is evidenced by their failure to properly investigate Crenshaw's reported sexual harassment against Jane. *Id*. Lorena ISD received multiple reports and photographic evidence of Crenshaw's reported sexual harassment. Despite the reports, Lorena ISD allowed Crenshaw to isolate Jane and failed to inform Jane's parents, the Texas Department of Family and Protective Services, or law enforcement of the reported abuse. *Id*.

#### 1. Plaintiff has adequately pleaded her constitutional claims against Lorena ISD.

Lorena ISD acknowledges Jane has a right to bodily integrity under the Fourteenth Amendment but contends it is not liable for the violation of those rights. Municipalities face §

1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). A municipality may not be liable for the conduct of its employees merely through respondeat superior. *Id*. at 691. Rather, municipal liability attaches only when: (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Id*. at 694.

Lorena ISD asserts "Plaintiff's Complaint is devoid of an allegation reflecting Lorena ISD adopted a policy that led to the alleged constitutional violations or otherwise had actual or constructive knowledge of such customs." LISD's Mot. at 9. However, the Supreme Court stated when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, [then] the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). The Fifth Circuit held in *Taylor* educator-on-student sexual abuse violates a student's constitutional rights. *Taylor*, 15 F.3d at 451–52. For the past thirty years, schools have been on notice that policies and training to protect and prevent teacher-on-student sexual abuse are required to protect students' rights to bodily integrity.

"[I]f a concededly valid policy is unconstitutionally applied by a municipal employee, the city is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." *Harris*, 489 U.S. at 387. Jane pleads facts to support that school officials were untrained in the proper procedure for reporting inappropriate behavior, sexual abuse, or grooming behaviors. When approached about the inappropriate behavior in the fall of 2020, Ms. Heslep counseled Crenshaw herself without filing a report or notifying other school officials the complaint had been made. Pl.'s Compl. at 6. In January 2021, Ms. Sams

brought photographs of Crenshaw lying under a blanket with Jane at nap time to Vice Principal Gerik and a meeting was held with Principal Jewell, Vice Principal Gerik, and Ms. Sams. *Id.* at 6–7. The photos were never formally reported or, as it appears from Plaintiff's complaint, passed on to Rusty Grimm, the school district's Title IX coordinator. *Id.* at 7. It does not appear from the pleadings that any school official had been trained by Lorena ISD on how to handle situations of inappropriate behavior or reporting on incidents of sexual abuse.

"Lorena ISD maintains . . . 'the absence of an official policy cannot be equated with the existence of an unconstitutional one.'" LISD's Mot. at 11. The Fifth Circuit, however, has long recognized an absence of policy claim when the omission would violate a student's constitutional rights. *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011). Jane pleads facts demonstrating that Lorena ISD should have been on notice and had policies regarding teacher-on-student sexual assault. Pl.'s Compl. at 20. It is reasonable to assume the absence of a policy on protection of students from sexual abuse by a teacher would result in a violation of a student's constitutional rights. If there had been a policy in place at Lorena Primary School regarding the supervision of employees and reporting inappropriate behavior, Jewell or other school officials likely would have investigated Crenshaw under the policy. *Id.* They would have discovered him lying under Jane's blanket at nap time with the lights off, that he often had Jane straddle him and wear his clothing, and that he showed overt favoritism towards Jane and Student A. School officials would also have known of the proper reporting avenues and the procedure for reporting inappropriate behavior and sexual misconduct, including handling the submission of the photographs of Crenshaw lying under a blanket with Jane at nap time. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Lorena ISD's Motion for Partial Dismissal (ECF No. 15) be **DENIED** and Jewell's Motion to Dismiss (ECF No. 16) be **DENIED.** Should the Court adopt this Report and Recommendation, Plaintiff's claims under Section 1983 and Title IX will remain.

## V. OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 20th day of May 2024.**

_____
**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**